# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-3030-01-CR-S-MDH |
| ) | |
| JEFFREY SCOTT SALTKILL, ) | |
| Defendant. ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Jeffrey Scott Saltkill asks to be sentenced to 180 months' imprisonment for sexual exploitation of a child. Mr. Saltkill withdraws his objection to the 5-level enhancement for pattern of conduct but believes the circumstances giving rise to the enhancement support a downward variance. A sentence of 180 months provides just punishment for the offense, while accounting for Mr. Saltkill's history and characteristics.

## SUGGESTIONS IN SUPPORT

**1. The law supports the application of a 5-level enhancement for engaging in a pattern of conduct; the nature and circumstances of Mr. Saltkill's actions support a downward variance.**

The PSR applies a 5-level enhancement because Mr. Saltkill engaged in a pattern of activity involving prohibited sexual conduct. USSG §4B1.5(b)(1). During his interview with police, Mr. Saltkill explained that his loneliness propelled him to connect with others online and, eventually, commit this crime. The evidence supporting the enhancement comes from two sources: (1) Mr. Saltkill exchanging multiple text messages with the victim over the course of one month; and (2) Mr. Saltkill's admission that he communicated

1

with other individuals. The Sentencing Commission uniformly applies this 5-level enhancement to a wide swath of conduct. Because Mr. Saltkill's pattern of conduct included no instances of inappropriate touching or conduct toward victims with whom Mr. Saltkill stood in a position of trust, his behavior is less egregious than others who also receive this 5-level enhancement.

A spectrum analysis could do more to distinguish between offenders with varying degrees of dangerousness. If, for instance, the Guidelines applied a 1-level enhancement if the pattern of conduct involved only inappropriate communications, rather than hands-on offenses, then Mr. Saltkill's guidelines would be 188 to 235 months. This hypothetical is suggested only to highlight that the facts and circumstances surrounding the application of the 5-level enhancement in Mr. Saltkill's case supports a downward variance.

**2. Mr. Saltkill's communications were inappropriate; however, they were fantasy where the individuals communicated over phone from different states, never seeing or touching one another.**

The offense of sexual exploitation of a child is an egregious one. Given the wide range of punishment authorized by Congress, the circumstances of these offenses must exist on a continuum. Several factors in Mr. Saltkill's case indicate that his offense should be placed on the lower end of that spectrum.

First, no hands-on offense occurred. In fiscal year 2019, 80.9% of offenders who were sentenced for sexual exploitation of a child were sentenced for an offense that involved sexual contact of a minor. U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography Production Offenses* at pp. 6 and 35. The high percentage of hands-on offenders provides some explanation for why the average sentence length for this offense

is so high. *See id*. at 47 ("…courts imposed longer average sentences when an offender or adult co-participant physically sexually contacted a minor victim (307 months) compared to offenses that did not involve sexual contact (221 months).") Mr. Saltkill exists in the minority of offenders who had no physical contact with the victim, thus, providing one reason for a minimum sentence.

Second, Mr. Saltkill did not stand in a position of trust with the victim. Mr. Saltkill was not a neighbor, teacher, family friend, or of any relationship to the victim. Mr. Saltkill resided several states away from the victim. He never met the victim in person. These facts, to some degree, mitigate the risk of a hands-on offense. In their 2021 report, the Sentencing Commission determined that an offender's proximity, a measure of the offender's physical location and relationship to his victim, was a key sentencing factor for this offense. *Id.* at pp. 26, 29-30. The Commission reasoned that the potential for physical harm to a child is greater when the offender is present in the same location as the victim. *Id.* at 44. According to this report, the majority of offenders resided in the same location as the victim and stood in a position of trust. *Id.* at pp. 29-30. Because Mr. Saltkill was not in close proximity to the victim, either by distance or relationship, a lower sentence is warranted.

When considered in terms of the wide range of facts and circumstances this Court sees, the facts of Mr. Saltkill's case are less grievous. No doubt this offense is serious, as is reflected in the 15-year mandatory minimum sentence authorized by Congress. However, Congress authorized a wide range of punishment to recognize that the circumstances of these offenses and the history and characteristics of the individuals involved vary greatly. When considering Mr. Saltkill's case, a punishment at the lower end of the spectrum is the

3

Case 6:22-cr-03030-MDH   Document 36   Filed 09/28/23   Page 3 of 5

appropriate one.

3. **Mr. Saltkill's upbringing and childhood contributed to the solitary lifestyle he lived at the time of the offense.**

Growing up, Mr. Saltkill lived with his mother and father. Throughout his childhood, Mr. Saltkill, along with his mother and siblings, suffered verbal abuse from his father. When Mr. Saltkill was 21 years old, his mother divorced his father. Emotional abuse at a young age can be damaging to one's sense of self-worth; being raised by a verbally abusive father contributed to Mr. Saltkill's feelings of depression.

Mr. Saltkill was close with his mother. When she passed away six years ago, he experienced loneliness, grief, and depression. It was these feelings of loneliness that fueled, in part, his behavior in the underlying offense. This is not offered as an excuse for Mr. Saltkill's crime, but rather to provide context for the offense.

As Mr. Saltkill matures, he better understands that he must find healthy relationships and support to combat his loneliness. Mr. Saltkill has no criminal history. He has a high school diploma and a history of employment. Given his education and work history, Mr. Saltkill's efforts at rehabilitation are more likely to be successful.

## CONCLUSION

A sentence of 180 months' imprisonment, followed by an appropriate term of supervised release, is the just and fair one in this case. Such a sentence fairly considers Mr. Saltkill's history and characteristics, the nature of the offense, and the other sentencing factors. Given Mr. Saltkill's financial condition, no fine should be imposed. Mr. Saltkill asks that the Court recommend the UNICOR program and designation to USP Marion.

Respectfully submitted,

*/s/ Megan Chalifoux*
**MEGAN CHALIFOUX**
Assistant Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system on September 28, 2023.

*/s/ Megan Chalifoux*
**MEGAN CHALIFOUX**